UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WOODMORE,<br>  Petitioner,<br>  v.<br>JAMES D. HARTLEY, Warden,<br>  Respondent. | NO. CV 11-5668-GW (AGR)<br><br>ORDER TO SHOW CAUSE |

On July 11, 2011, Petitioner filed a Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, it appears that the one-year statute of limitations has expired.

The Court, therefore, orders Petitioner to show cause, on or before ***August 15, 2011***, why this Court should not recommend dismissal of the petition with prejudice based on expiration of the one-year statute of limitations.

///
///
///
///

# I.
# PROCEDURAL BACKGROUND

On July 9, 1993, a Los Angeles County jury convicted Petitioner of second degree murder and use of a firearm. (Petition at 2.) Petitioner was sentenced to 15 years to life. (*Id.*) On June 14, 1995, the California Court of Appeal affirmed the conviction. (*Id.* at 3.) Petitioner does not recall whether he filed a petition for review. (*Id.*) However, according to the California Appellate Courts Online Docket, he did not.

On April 5, 2002, Petitioner filed a state habeas petition in the Superior Court, which was denied. (Petition at 4.) In May 2010, Petitioner filed a second state habeas petition in the Superior Court, which was denied on June 21, 2010. (*Id.*) On October 25, 2010, Petitioner filed a state habeas petition in the California Supreme Court, which was denied on April 20, 2011, with citations to *In re Robbins*, 18 Cal. 4th 770, 780 (1998) and *In re Clark*, 5 Cal. 4th 750, 767-769 (1993). (Petition at 4 & Attached.)

On June 20, 2011, Petitioner signed the federal petition, which was filed in this Court on July 11, 2011. (Petition at 8.)

# II.
# STATUTE OF LIMITATIONS

The petition was filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, the Court applies the AEDPA in reviewing the petition. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).

The AEDPA contains a one-year statute of limitations for a petition for writ of habeas corpus filed in federal court by a person in custody pursuant to a judgment of a state court. 28 U.S.C. § 2244(d)(1). The one-year period starts running on the latest of either the date when a conviction becomes final under 28 U.S.C. § 2244(d)(1)(A) or on a date set in § 2244(d)(1)(B)-(D).

### A. The Date on Which Conviction Became Final – § 2244(d)(1)(A)

The California Court of Appeal affirmed Petitioner's conviction on June 14, 1995. Because Petitioner did not file a petition for review with the California Supreme Court, his conviction became final 40 days later on July 24, 1995. *See Gaston v. Palmer*, 417 F.3d 1030, 1033 (9th Cir. 2005). Because the conviction became final before the AEDPA was enacted, Petitioner had until April 24, 1997, to file a federal habeas petition. *Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003).

#### 1. Statutory Tolling

The statute of limitations is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Because Petitioner did not file his first state habeas petition until 2002, he is not entitled to statutory tolling. *See Welch v. Carey*, 350 F.3d 1079, 1081-84 (9th Cir. 2003) (state habeas petition filed after the limitations has expired does not revive the expired limitations period).

#### 2. Equitable Tolling

"[T]he timeliness provision in the federal habeas corpus statute is subject to equitable tolling." *Holland v. Florida,* 130 S. Ct. 2549, 2554, 177 L. Ed. 2d 130 (2010). "[A] 'petitioner' is 'entitled equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)). "The diligence required for equitable tolling purposes is "reasonable diligence," not "maximum feasible diligence." *Id.* at 2565 (citations and quotation marks omitted). The extraordinary circumstances must have been the cause of an untimely filing. *Pace*, 544 U.S. at 418. "[E]quitable tolling is available for this reason only when '"extraordinary circumstances beyond a prisoner's control

make it *impossible* to file a petition on time'" and '"the extraordinary circumstances" were the *cause* of [the prisoner's] untimeliness.'" *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (citations omitted, emphasis in original).

There is no indication in the petition that Petitioner is entitled to equitable tolling.

### B. Date of Discovery – 28 U.S.C. § 2244(d)(1)(D)

In the context of an ineffective assistance claim, the statute of limitations may start to run on the date a petitioner discovered (or could have discovered) the factual predicate for a claim that his counsel's performance was deficient, or on the date a petitioner discovered (or could have discovered) the factual predicate for prejudice, whichever is later. *See Hasan v. Galaza*, 254 F.3d 1150, 1155 (9th Cir. 2001). Therefore, the statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The statute starts to run when the petitioner knows or through diligence could discover the important facts, not when the petitioner recognizes their legal significance. *Hasan*, 254 F.3d at 1154 n.3.

In Ground One, Petitioner claims that his trial counsel was ineffective because she received information from her investigator that would have shown that Petitioner was innocent. (Petition at 5.) In Ground Three, Petitioner claims that his appellate counsel on direct appeal was ineffective because he gave this information to counsel and counsel did not raise it before the Court of Appeal. (*Id.* at 6.)

Petitioner is referring to two Investigative Reports prepared by an investigator at the Public Defender's office named Doug Urschel, one dated January 11, 1994, and other dated January 31, 1994. (*Id.*, Exhibits at 1-2.) According to Petitioner's declaration ("Petitioner Decl."), attached to the petition, the latest Petitioner was aware of these reports was June 14, 1995, when the

4

1 | Court of Appeal affirmed his conviction. (Petitioner Decl. ¶¶ 7-8.) One year from
June 14, 1995, is June 14, 1996, which is earlier than the expiration date of April
24, 1997. Accordingly, § 2244(d)(1)(D) does not extend the expiration date.

**C.     Actual Innocence**

In *Johnson v. Knowles*, 541 F.3d 933, 934 (9th Cir. 2008), the Ninth Circuit examined the proposition that a "miscarriage of justice excuses an untimely filed habeas petition." The court concluded that "the miscarriage of justice exception is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Id.* at 937. (emphasis in original).

The actual innocence standard "is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (citation omitted). Petitioner must "demonstrate that more likely than not, in light of . . . new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *Id.* To do so, Petitioner must present "'new reliable evidence.'" *Id.* at 537. Based on all the evidence, both old and new, "the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* at 538 (citation omitted). "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.*

The following is a summary of the Court of Appeal's recital of the facts of Petitioner's case.

>  Petitioner was a Swan gang member and known as K-Mike or Big Mike. Jose Agurie, known as Smiley, was also a Swan gang member. On July 9, 1992, Smiley was shot many times. Officer Laufer, who was called to the scene, saw Meraz, pacing and angry. Meraz said he knew who shot Smiley and he would "take care of it." Laufer saw Petitioner walk over to Meraz and tell him to calm down. The two men then joined a third person, Pardo. The paramedics

| | |
|---|---|
| 1 | arrived and put Smiley in the ambulance.  Meraz asked where they were taking |
| 2 | him and was told Daniel Freeman Hospital.  Meraz, Petitioner, and Pardo |
| 3 | drove off in a white and red Oldsmobile (Petitioner's car). |
| 4 | That same night, shortly after midnight, Roger Coleman and a friend Robert |
| 5 | Reed, a.k.a. Buddha, were standing in front of an apartment building.  Shawn |
| 6 | Washington, a female resident, was talking to them at about 12:50 a.m.  She |
| 7 | walked to the alley in the back where she saw Meraz talking to a woman |
| 8 | named Nay-Nay.  Buddha went back to alley.  4-5 seconds later, Coleman |
| 9 | heard gunshots and Buddha was on the ground.  Coleman saw Meraz run |
| 10 | down the alley. |
| 11 | Officer Bautista also heard gunshots and saw Meraz running through the alley. |
| 12 | Meraz tried to jump through the open window of Petitioner's car that started to |
| 13 | move from the curb.  Meraz fell short and ended up holding onto the door with |
| 14 | his knees and feet scraping the ground. |
| 15 | Laufer saw Meraz, Petitioner, and Pardo arrive at Daniel Freeman Hospital in |
| 16 | Petitioner's car at about 1:25 or 1:30 a.m.  Laufer talked to them for ten |
| 17 | minutes later, but they left when Laufer telephoned his commander. |
| 18 | At about 3:00 a.m., Meraz, Petitioner, and Pardo were found hiding in the |
| 19 | bushes outside the hospital parking lot. |

(Petition, Exhibits at 5-8.)

Petitioner's claim of innocence relies on the 1994 Investigative Reports that, according to Petitioner argues "demonstrat[e] that Petitioner played no role in [the] murder." (Petition at 5.) According to the first report, on January 10, 1994, Urschel interviewed a man named Mario Adams. (*Id.*, Exhibits at 1.)[1] Adams told Urschel that Petitioner had nothing to do with Reed's murder. Adams

---

[1] It is not clear what prompted Urschel to interview Adams.  The report states that the investigation was "due to additional information." (Petition, Exhibits at 1.)

6

belonged to the same gang as Petitioner, the Swans. On the night of the attack against Smiley, Adams and other Swans gang members whom Adams refused to identify wanted revenge for Smiley's death. Adams "planned" that "revenge." He gave his handgun to an unnamed "Mexican" and his car keys to a fellow gang member named Little Lumpy. Adams told the two men to "get the revenge" and watched them drive off in his car. According to Adams, Petitioner could not have killed Reed because that was not the way Adams "planned it." (*Id.*)

On January 31, 1994, Urschel wrote a second report. (*Id.*, Exhibits at 2.) He was unable to locate Little Lumpy, and Adams was in the hospital awaiting brain surgery and "appears not to be able to testify in court." (*Id.*)

Petitioner does not meet the "stringent showing" required by actual innocence. Adams has no first-hand knowledge of what happened after he gave the gun to the Mexican. Adams' conclusion that Petitioner could not have done it is not supported by any facts other than Adams' statement that it was not the way he planned it. Moreover, based on the facts outlined in the Court of Appeal's decision, Petitioner was on the scene when Smiley was shot, and he was on the scene when Reed was shot. Meraz, the alleged shooter, was seen when Reed was shot. There is no indication that "Mexican" or Little Lumpy, the two people Adams supposedly ordered to obtain revenge for Smiley's death, were at the scene of Reed's death.

### III.

### **ORDER TO SHOW CAUSE**

IT IS THEREFORE ORDERED that, on or before ***August 15, 2011***, Petitioner shall show cause, if there be any, why the Court should not recommend dismissal with prejudice of the petition based on expiration of the one-year statute of limitations.

///

///

**Petitioner is also advised that if he fails to timely respond to this Order to Show Cause, the Court will recommend that the petition be dismissed with prejudice based on expiration of the one-year statute of limitations.**

DATED: July 15, 2011

_____
ALICIA G. ROSENBERG
United States Magistrate Judge